STATE of Tennessee, Plaintiff-Appellee,

v.

**Donald Michael MOORE, Defendant-Appellant.**

Supreme Court of Tennessee.

April 6, 1981.

William M. Leech, Jr., Atty. Gen. & Reporter, Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville, for plaintiff-appellee.

Richard H. Burr, III, Nashville and Richard E. Shapiro, Southern Prisoners' Defense Committee, New Orleans, for defendant-appellant.

## OPINION

HARBISON, Chief Justice.

Appellant, Donald Michael Moore, was convicted in the Criminal Court of Shelby County, Tennessee, of murder in the first degree and was sentenced to death. Subsequent to the trial he voluntarily withdrew a motion for new trial which had been filed on his behalf and sought only the statutory review of the death sentence in this Court provided in T.C.A. § 39–2406(a). Substitute counsel on appeal, however, have presented twenty-two issues for review, eleven of them dealing with the guilt phase of the trial and the remainder with the sentencing phase. We find only one issue which requires modification of the judgment of the trial court.

While there was conflicting testimony offered at the trial, there was overwhelming evidence from which the jury could have concluded that the appellant willfully, deliberately, maliciously and premeditatedly murdered one Charles Brueck, an 18-year-old boy, and thereafter mutilated his corpse with the studied and deliberate purpose of rendering it unrecognizable and unidentifiable.

The record shows that appellant, then about twenty-nine years of age, abducted Brueck at gunpoint, took him to a remote area of Shelby County, shot him three times with an automatic pistol, twice in the head and once in the chest, and concealed his body in the underbrush. He returned two days later with a shotgun and shot away the hands and feet of the body, together with the face and teeth with the admitted purpose of trying to prevent the body from being identified. He then covered it with earth to conceal it. When questioned by the police after a missing person report had been filed, he gave a false statement, denying any knowledge of the whereabouts of the victim.

Heavy rains in the area washed soil off the body, and it was accidentally discovered by two fishermen several weeks after the homicide. When appellant was arrested, he admitted having killed the victim but stated that the shooting was accidental. He gave several conflicting stories, both orally and in writing, concerning his involvement in the criminal episode. His credibility was seriously impaired both by the internal inconsistencies in the versions which he gave and by explicit contradictions from witnesses called both by the State and by appellant.

The victim and appellant had previously been acquainted for some period of time. Despite the difference in their ages, they apparently had shared living quarters from time to time. On one previous occasion appellant had displayed a violent fit of temper and anger against the victim. There was testimony before the jury that appellant was engaged in illegal narcotics traffic in which he employed young boys. He himself introduced evidence, at least by implication, that the victim was a drug user. The victim and some other boys had contacted appellant on the day of the homicide about his possible purchase of a weapon. Appellant conceded that he was annoyed at the victim for having given other persons his telephone number. He went to the victim's apartment, at gunpoint forced him into appellant's automobile, and left the

premises. Neither the family nor the friends of the victim ever saw him again, and the skeleton of his body was discovered several weeks later as stated above.

While appellant at first denied that he took the victim to the scene where the body was found, he later admitted that he did do so and claimed that he and the victim had gone there for the purpose of target practice with a pistol. He contended that when he handed the pistol to the victim, it accidentally discharged, fatally wounding him in the chest. Appellant then shot twice more into the head of the victim with the ostensible purpose of destroying his teeth, and he admitted later returning to the scene with a shotgun and further mutilating the corpse.

■ Neither the jury nor the trial court was obligated to accept appellant's version of the shooting, and they were fully warranted in concluding that the homicide amounted to nothing more than the cold-blooded execution of a youthful victim by a hardened and calloused adult. We find entirely without merit the issues urged by counsel that appellant was entitled to peremptory instructions and that the evidence was insufficient to support the finding of guilt.

Most of the other evidentiary issues and questions presented on the guilt phase have probably been waived, either by failure of counsel to object at the trial or by withdrawal of the post-trial motion. Nevertheless, we have considered all of these and find them without substance. Several issues were presented regarding the admission of evidence. With respect to some of these, however, the State did nothing more than pursue issues which the accused himself had raised through cross-examination or during the course of his evidence; in other instances the evidence questioned was admissible to demonstrate motive of the accused, fear of the victim and the nature of the wounds inflicted. Other issues regarding the voir dire examination of jurors and the limitation of cross-examination by counsel for appellant are entirely without substance. Accordingly, treating the guilt

phase of the trial as properly before this Court, we find that it is without reversible error, and we affirm the verdict of murder in the first degree.

The same can be said of most of the eleven issues presented on the sentencing phase. A number of these consist of simply rearguing the constitutionality of the death penalty in general and the statutory provisions and procedures of this State regarding same. Most of those questions have been considered in detail in other opinions of this Court, such as *Berry v. State,* 592 S.W.2d 553 (Tenn.1980); *Houston v. State,* 593 S.W.2d 267 (Tenn.1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 251, 66 L.Ed.2d 117 (1980); and *Cozzolino v. State,* 584 S.W.2d 765 (Tenn.1979). Others were addressed in more recent opinions of the Court released during 1981 but not yet reported: *Dicks v. State* and *Rickman and Groseclose v. State.* At the sentencing phase of this trial, however, in our opinion error was committed which requires a re-sentencing hearing and some guidance from this Court.

The State relied on three of the statutory aggravating circumstances set out in T.C.A. § 39–2404(i). The jury found two of these to have been established. It found that no mitigating circumstances had been proved sufficient to outweigh the aggravating circumstances.

■ The jury found that the murder was committed while the accused was engaged in committing one of the several felonies listed in T.C.A. § 39–2404(i)(7), that of kidnapping. The evidence justifies the finding of the jury in that regard. However, the trial judge did not define for the jury the criminal offense of kidnapping. This was the only one of the listed felonies upon which the State relied. While the evidence clearly supports a finding that the accused did abduct the victim at gunpoint and executed him, proper procedure, in our opinion, requires that the trial judge provide the jury with the statutory definition of any felony listed in this code section upon which the State relies. Since in the present case the statutory requirements were obviously met, we would not necessarily reverse on

this point alone. However, since a rehearing is required, we direct that the trial judge include in his instructions to the jury the statutory definition of any felony relied upon by the State as an aggravating circumstance. This practice should regularly be followed by trial judges in the sentencing phase where the provisions of this section are invoked to establish an aggravating circumstance.

The other aggravating circumstance found by the jury was T.C.A. § 39-2404(i)(2), as follows:

"The defendant was previously convicted of one or more felonies, other than the present charge, which involves the use or threat of violence to the person."

In 1973 appellant was convicted of burglary in the second degree and of arson, both convictions resulting from a single criminal episode. These were his only previous convictions, insofar as the record discloses. Certainly they were the only ones relied upon by the State at the trial. The trial judge charged the jury as a matter of law that arson is a crime which involves the use or threat of violence to the person.

In this regard, in our opinion, the trial judge erred. Arson and burglary in the second degree may be committed under circumstances which do involve the use or threat of violence to a person. As the crimes were defined at the time of the homicide in question, however, either could have been committed under circumstances not involving such use or threat. The evidence indicates that in fact no other person was endangered or threatened.

T.C.A. § 39-508, the statute regarding aggravated arson, a Class X felony which does involve danger to others, was not enacted until 1979; the homicide involved here occurred in September 1977. The general statute proscribing arson, T.C.A. § 39-501, defines the offense as the burning of any house, outhouse, building or other structure, the property of the accused or of another. Obviously such an offense might or might not involve the use or threat of violence to other persons. Burglary in the second degree involves the breaking and entering of a dwelling "by day." T.C.A. § 39-903.

Little is shown in the record as to the circumstances of the offense for which appellant was convicted. There is evidence that he and another burglarized a dwelling and then set fire to it. There is also evidence from appellant's father that appellant only drove a vehicle and that his accomplice, or codefendant, committed the actual breaking and entering of the dwelling. Appellant's father, however, testified that appellant did procure the gasoline or other fluid used in setting fire to the building. The District Attorney General stated to the trial judge that the house was empty and that no one was living in it at the time of the offense, although no witness actually testified to these facts. For purposes of this appeal, however, we must assume that the statements made by the District Attorney General were correct and that in fact appellant was convicted of burglarizing and setting fire to an empty dwelling. Under those circumstances, neither the burglary nor the arson necessarily involved any use or threat of violence to another person, and no actual danger to any other person was proved.

Accordingly, we find the evidence insufficient to support the finding of the jury with regard to this aggravating circumstance. It is true that both arson and second degree burglary involve conduct which is antisocial in the extreme. Conviction of either of those offenses could qualify as an aggravating circumstance under T.C.A. § 39-2404(i)(2) but not necessarily in all cases or as a matter of law. In our view, it is incumbent upon the State, when relying upon conviction of what are essentially crimes against property, to show that there was in fact either violence to another or the threat thereof; this would not generally be required if the conviction were for rape, murder or other crimes which by their very definition involve the use or threat of violence to a person.

The State, of course, is required to show only one aggravating circumstance

beyond a reasonable doubt in order to justify imposition of the death penalty. Here the jury found two such circumstances. Since we find the proof of one of these to have been insufficient, however, we are constrained to the view that the sentence of death should be reversed, and the cause should be remanded to the trial court for the purpose of conducting a new sentencing hearing.

The jury had to weigh all of the aggravating circumstances in the case against the contentions of the accused that the shooting was accidental and unintended and that he did not have a propensity or inclination to violence.

The prior convictions of appellant were first developed during his cross-examination after he had testified on direct that he had a criminal record. They were further documented in the sentencing phase specifically as proof of aggravating circumstances under T.C.A. § 39–2404(i)(2).

Both at the guilt and at the sentencing phases of the trial appellant offered evidence that he was not a person with violent tendencies. His prior convictions might have been admissible in contradiction of that evidence; both involved very serious criminal activity even if no person were endangered. They also tended to rebut any potential claim of mitigation under T.C.A. § 39–2404(j)(1)—the absence of prior significant criminal activity.

While proof of these convictions was admissible for purposes other than mere reflection upon credibility, these crimes were not properly shown to qualify as aggravating circumstances under T.C.A. § 39–2404(i)(2). Yet they were offered for that very purpose and the jury was instructed that one of them did qualify. The Court has no way of knowing whether the jury would have imposed the death penalty had they not been permitted to so consider this evidence in their weighing process. *Cf. Stephens v. Zant*, 631 F.2d 397, 406 (5th Cir. 1980); *State v. Cherry*, 298 N.C. 86, 257 S.E.2d 551 (1979), *cert. denied*, 446 U.S. 941, 100 S.Ct. 2165, 64 L.Ed.2d 796 (1980).

Accordingly, the conviction for murder in the first degree is affirmed; the cause is remanded to the trial court for another sentencing hearing consistent with this opinion. Costs incident to the appeal are taxed to appellee; all other costs will be assessed in the trial court.

BROCK, C. J., FONES and DROWOTA, JJ., and DAVIS, Special Judge, concur.