**STATE of Tennessee, Appellee,**

v.

**Ronnie William DAVIS and Frederick William Brist, Appellants.**

Court of Criminal Appeals of Tennessee, at Jackson.

May 13, 1982.

Robert L. Childers, Memphis, for appellants.

William M. Leech, Jr., Atty. Gen., Ann Lacy Johns, Asst. Atty. Gen., Nashville, J.

Kerry Blackwood, Preston Parks, Asst. Dist. Attys. Gen., Somerville, for appellee.

## OPINION

TATUM, Judge.

The appellants, Ronnie William Davis and Frederick William Brist were indicted for second-degree burglary. At the conclusion of the proof, the trial court directed the jury to return a verdict of guilt as to both appellants and submitted to the jury only the issue of punishment. The jury set punishment at not more nor less than 3 years in the penitentiary for each appellant. On this appeal, the appellants correctly state that the trial court erred in directing a verdict of guilt. They also make issues concerning the juvenile court procedure. We sustain the issue concerning the directed verdict and find that the procedure employed in juvenile court placed the appellants in double jeopardy.

The evidence of the guilt of both appellants is conclusive. State's witnesses testified that the 17-year old appellants were apprehended while burglarizing the mobile home of Mr. and Mrs. Dale Dixon at approximately 10:30 A.M., on September 22, 1980. Although both appellants had pled not guilty, they testified and admitted their guilt at trial. Based on this evidence, the trial judge, on his own motion, directed the jury to find the appellants guilty of second-degree burglary and to fix their punishment.

In directing a verdict of guilt, the trial judge violated the appellants' rights under the Fifth and Sixth Amendments to the United States Constitution and under Sections 6, 8, and 9 of Article I of the Tennessee Constitution. Though the proof of the appellants' guilt was conclusive, the issue of guilt should have been submitted to the jury on their pleas of not guilty. In directing the verdict of guilt, the appellants were deprived of their fundamental constitutional right to a jury trial. In *United Brotherhood v. United States*, 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973 (1947), the United

States Supreme Court reiterated that in criminal cases "a judge may not direct a verdict of guilty no matter how conclusive the evidence." For like holdings see *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *United States v. Martin Linen Supply Company*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); *Sparf v. United States*, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895). This error cannot be held "harmless." See *Bollenbach v. United States*, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946).

Rule 29, T.R.Cr.P. permits a trial judge to order the entry of a judgment of acquittal when the evidence is insufficient as a matter of law to support a conviction. *Overturf v. State*, 571 S.W.2d 837 (Tenn.1978). Rule 23, T.R.Cr.P. requires that in all criminal cases except small offenses, trials shall be by jury unless waived by the defendant. There is no provision in this state or any other jurisdiction for the trial judge to order a verdict of conviction. This procedure is repugnant to the constitutional concept of criminal jurisprudence.

The appellants next insist that their trial in Circuit Court constituted double jeopardy since jeopardy had attached at the proceeding in Juvenile Court.

These cases were initiated in Juvenile Court by "summons." The summons directed the appearance of the appellants and their parents before the Juvenile Court of Hardeman County at a specified time for the following purposes:

" \_ \_ \_to answer the charge of the petition, a copy of which accompanies this summons.*

You are further notified that the court before hearing the petition on its merits may transfer said child to the sheriff of Hardeman County to be held according to law and to be dealt with as an adult as provided in the Criminal Laws of Tennessee."

As we understand the summons, the appellants were given notice to answer the

---

* No petition is in the record.

charge on its merits. They were also notified that a transfer hearing "may" be had pursuant to T.C.A. § 37–234.

The transcript of the proceeding in Juvenile Court was not preserved. This leaves us with little, other than the pleadings and orders entered by the court, to determine what actually happened in Juvenile Court. In examining the orders or judgments of the court, we find that two identical judgments were rendered against each defendant. The first judgments are as follows:

"This cause came on to be heard upon a sworn petition, and the proper parties being then before the Court, and having examined the witnesses, considered the evidence, and being sufficiently advised, the Court finds that said child was 17 years or more of age at the time of the alleged conduct and that there are reasonable grounds to believe that:

1. Said child did on or about Sept. 22nd, 1980, in Hardeman County, Tennessee commit the delinquent act alleged, to wit, Broke in the home of Wynne Dixon. Color T.V., shotgun and other items were taken. Formal charge is Burglary

2. Said child is not committable to an institution for the mentally retarded or mentally ill.

3. The interests of the community require that said child be placed under legal restraint or discipline.

IT IS THEREFORE ORDERED that said child be and is hereby transferred to the Sheriff of Hardeman County to be held according to law and to be dealt with for the alleged offense as provided in the criminal laws of Tennessee."

The second judgments are as follows: "This cause came on to be heard upon the sworn petition of Wayne Watkins-H.C. S.D. and the proper parties being then before the Court, and having examined the witness and considered the evidence and being sufficiently advised the *Court holds that the child is a delinquent child,* within the meaning of the law of the State of Tennessee in that said child admitted to the *charge in the petition during the prehearing conference.* Formal

charge in the petition is Burglary. (Emphasis supplied)

It is therefore ordered that: Youth be transferred to the Circuit Court of Hardeman County to be dealt with as an adult. Court cost of $17.50 is to be paid. The original bond of $250.00 is continued."

■ As above stated, the summons gave notice for both a disposition trial under T.C.A. §§ 37–223—37–229 and also for a transfer hearing as allowed by T.C.A. § 37–234. The first judgments quoted above make a finding of "reasonable grounds to believe" without a finding of guilt. The first judgments conform with transfer hearings as provided in T.C.A. § 37–234. If these were the only judgments entered, we would have no hesitancy in saying that double jeopardy did not attach in either case. However, the second judgments which were entered at the same time as the first judgments, state that "the court holds that the child is a delinquent child___." This finding authorized the Juvenile Court to place the appellants on probation or in an institution, to commit them to the State Department of Correction or to the custody of the County Department of Children's Services, or to impose fines not to exceed $50. T.C.A. § 37–231.

The second judgments were "written in terms of potential risk or risk of trial and conviction" and place this case squarely within the holding of *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). In the *Breed* case, the juvenile was put in jeopardy at a State adjudicatory hearing in Juvenile Court to determine whether he had committed acts which would have been criminal if committed by an adult. After a finding by the Juvenile Court that the youth had committed the acts, he was found to be unfit for treatment as a juvenile and transferred from Juvenile Court to Criminal Court where he was tried as an adult. The United States Supreme Court, speaking through Chief Justice Burger, held that this procedure constituted double jeopardy and that the youthful offender could not be tried the second time as an adult, saying:

"We cannot agree with petitioner that the trial of respondent in Superior Court on an information charging the same offense as that for which he had been tried in Juvenile Court violated none of the policies of the Double Jeopardy Clause. For, even accepting petitioner's premise that respondent 'never faced the risk of more than one punishment,' we have pointed out that 'the Double Jeopardy Clause ... is written in terms of potential or risk of *trial* and conviction, not punishment.'"

 The *Breed* court sanctioned a procedure outlined in T.C.A. § 37–234 for transfer of a child to Criminal Court for trial as an adult. The hearing on the petition must await final determination of the transfer hearing. The Juvenile Court determines at the transfer hearing whether the juvenile will be tried as an adult in Criminal Court or as a juvenile in Juvenile Court. If the child is transferred to Criminal Court, then the Juvenile Court acts no further after rendering a judgment in the transfer hearing. If the child is not ordered transferred for trial as an adult at the transfer hearing, then the Juvenile Court conducts a trial on the merits of the petition. If the procedure of T.C.A. § 37–234 is substantially followed, jeopardy could not attach in the transfer proceeding. See *McGaha v. Tennessee*, 461 F.Supp. 360 (Dist.Ct.E.D.Tenn. 1978). In the case *sub judice*, the juvenile judge blended a transfer hearing with a hearing on the merits of the petition and double jeopardy resulted when the appellants were again tried in Criminal Court. The legal principles involved here are the same as in *Seiber v. State*, 542 S.W.2d 381 (Tenn.Cr.App.1976), with respect to double jeopardy.

The issue of the appellants that they did not receive written notice of the transfer hearing is without merit. Also, this issue is moot in view of our disposition of the case.

The appellants also complain that their adjudicatory hearing was conducted by a non-lawyer juvenile judge, citing *Anglin v. Mitchell*, 596 S.W.2d 779 (Tenn.1980). As stated, the juvenile judge blended a transfer hearing with an adjudicatory hearing. We adhere to this court's holding in *State v. Briley*, 619 S.W.2d 149 (Tenn.Cr. App.1981), that an attorney juvenile judge is not required for a transfer hearing. However, in context of this case, where confinement may occur as a result of the adjudicatory hearing, we think that a lawyer-judge was mandated for the adjudicatory hearing as dictated by *Anglin v. Mitchell.*

The judgments of the criminal court and juvenile court are reversed. The cases are remanded to the juvenile court for an adjudicatory hearing by a legally competent judge as mandated by *Anglin v. Mitchell.* The purported transfer proceedings and the judgments thereon are vacated and dismissed.

WALKER, P. J., and DWYER, J., concur.