STATE of Tennessee, Appellee,

v.

Kenneth Wayne CAMPBELL, Appellant.

Supreme Court of Tennessee,
Eastern Division, at Knoxville.

Jan. 30, 1984.

Laws & Walton, P.C., Elizabethton, for appellant.

Wayne E. Uhl, Asst. Atty. Gen., William M. Leech, Jr., Atty. Gen., Nashville, for appellee.

## OPINION

COOPER, Justice.

Appellant, Kenneth Wayne Campbell, has appealed his conviction of murder in the first degree, and the sentence of death. On reviewing the record, we find no merit in the several assignments of error. The verdict and judgment are supported by material evidence, and the sentence is in no way arbitrary or disproportionate. We, therefore, affirm the conviction and the sentence.

Appellant was convicted of killing William Hughes, Sr. in the perpetration of a robbery. Mr. Hughes, a seventy-two year old resident of the Veteran's Administration retirement home, was found on July 7, 1981, in the woods alongside Quarry Road in Johnson City, Tennessee. He had been beaten severely about the head with a blunt object. Two fingers on his left hand were crushed and maimed, indicating he had tried to ward off the blows. Mr. Hughes told one of the men who found him that a man whose wife was having a baby "took him in a car" and was "gonna beat him to death with a rock," and that the man had taken his watch, ring, and pocketbook. When the ambulance came, Hughes told the emergency medic a similar story, that a man he had been drinking with at a bar, had gotten a cab to take Hughes home with him, and had robbed him. Hughes said he had been lying there since the day before. Hughes died later that evening from his injuries.

The autopsy showed that Mr. Hughes had sustained at least eight blows to the head of such severity that his skull was fractured and he had a hemorrhage of the brain.

A subsequent examination of the area where Mr. Hughes was found turned up Mr. Hughes' glasses, checkbook, some cigarettes and two tall Budweiser cans. Also, in the course of their investigation, the police located witnesses who testified that Mr. Hughes and appellant were together in the Frosty Mug Tavern on July 6, 1981, and that they left the tavern together in a taxi cab at about 5:00 p.m.

The cab driver testified that he drove the appellant and Mr. Hughes to a drive-in convenience market, where appellant paid for three tall cans of beer. Campbell and Hughes each drank a can, while the driver followed Campbell's directions to drive out Milligan Highway toward the Hiwassee Apartments. On the way, the men talked about Campbell's pregnant wife. The last the cab driver saw of his passengers, they were walking toward a wooded area bordering the apartment house parking lot. Appellant was wearing tennis shoes, jeans and a white T-shirt. The men took with them the beer cans they had purchased at the drive-in market.

Around 6:00 p.m., Rick Belcher, a Johnson City police officer who lived in the apartment complex, saw appellant come out of the woods along Quarry Road. Appellant was walking fast and appeared to be nervous. He was still wearing tennis shoes and jeans but his T-shirt was off and tucked into the back of his jeans. Belcher saw something "pink" which he identified as blood on the T-shirt, and assumed appellant was going for help for someone hurt in the woods. Unfortunately, Belcher did not make inquiry of appellant.

Between 6:00 p.m. and 6:30 p.m., appellant suddenly appeared at the home of Sherri Hall, his girlfriend's sister, which was located near the apartments and Quarry Road. He was dressed in tennis shoes and jeans, but had no T-shirt with him. At appellant's request, Sherri drove him to his home, and then drove him, his girlfriend, and her child to Butler, Tennessee. Once at Butler, however, appellant had Sherri take them back to Johnson City.

The next day, during the investigation of a crime unrelated to the Hughes' killing, Sergeant Jerry Tunnell, of the Johnson City Police Department, interviewed appellant. Appellant was dressed in tennis shoes and blue jeans. He told the officer he was from Illinois or Pennsylvania, and that he and his pregnant wife (girlfriend) had been in Johnson City for three weeks. Afterward, appellant told his girlfriend that he had

killed somebody, but later said he was kidding.

The next day, July 8th, Tunnell mentioned his encounter with appellant to officers investigating the Hughes' murder. Realizing that appellant matched the description of the man who had been with Mr. Hughes at the Frosty Mug, the officers went to the apartment occupied by appellant and his girlfriend. The girlfriend turned Campbell's jeans and tennis shoes over to the officers. Subsequently, tests conducted by the Federal Bureau of Investigation revealed the presence of human blood on appellant's blue jeans. It was of a type different from appellant's.

On learning of the visit by officers to his apartment, appellant voluntarily went to the police station, where he took a psychological stress test (PSI) and gave a statement. Appellant admitted that he had met Hughes at the Frosty Mug, but claimed that he had walked by himself from the tavern to his girlfriend's apartment at 6:00 p.m.

■ Appellant sought to have the statement given police officers suppressed on the ground that he had not been given the *Miranda* warnings prior to giving the statement, and now insists that the trial court erred in admitting the statement in evidence over objection. Appellant concedes that prior to his taking the PSI test, he was read his *Miranda* rights from a form which he signed, but argues that his waiver of rights was limited to the PSI test. We do not understand that to be so from the record. But, in any event, the record shows that after the PSI test was completed and before appellant made any statement to the police officer, the officer repeated the *Miranda* rights to appellant and appellant indicated that he understood his rights. From this, the trial court found that appellant knowingly and intelligently waived his *Miranda* rights after having been advised of them. In our opinion, the evidence supports the trial court's findings.

1. T.C.A. § 39–2–203(i)(7).

■ Appellant also argues that the evidence, with or without appellant's statement, is insufficient to sustain a conviction of appellant of murder in the first degree. We disagree. While the evidence against appellant was circumstantial, it unerringly pointed to the guilt of appellant and was sufficient for the trier of fact to find, beyond a reasonable doubt, that appellant killed Mr. Hughes in the course of a robbery, which is murder in the first degree. *See* T.C.A. § 39–2–202(a).

■ Appellant has not specifically challenged the sufficiency of the evidence that is the basis of the jury's imposition of the death penalty, but directs his challenge to the fact that the jury verdict form prescribed by T.C.A. § 39–2–203(g) is missing from the court record. However, T.C.A. § 39–2–205(c) specifically requires this court, in reviewing a sentence of death for murder in the first degree, to "determine whether (1) The sentence of death was imposed in any arbitrary fashion; (2) The evidence supports the jury's findings of a statutory aggravating circumstance or statutory aggravating circumstances; (3) The evidence supports the jury's finding of the absence of any mitigating circumstances sufficiently substantial to outweigh the aggravating circumstance or circumstances so found; and (4) The sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the nature of the crime and the defendant."

A jury may impose the death penalty on a defendant found guilty of murder in the first degree only upon its finding that one or more aggravating circumstances, listed in the statute, are present, and that such circumstance or circumstances are not outweighed by mitigating circumstances. *See* T.C.A. § 39–2–203(g).

In this case the record shows that in addition to finding that appellant was guilty of murder in the first degree in the perpetration of a robbery,[1] the jury found appellant had been "previously convicted of one or more felonies other than the present

charge which involved the use or threat of violence to the person,"[2] and also "the murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind."[3] The jury also specifically found that there were no mitigating circumstances sufficiently substantial to outweigh the statutory aggravating circumstances, and fixed appellant's sentence at death. The jury's findings being shown in detail in the record, the fact that the jury verdict form is missing is immaterial.

On reviewing the record, we find material evidence to support the finding of the jury as to each of the three aggravating circumstances, and that there is no evidence of any mitigating circumstance. On considering both the nature of the crime and the appellant, as we are required to do, we find that the sentence of death was neither arbitrary nor excessive, but was in accord with the penalty imposed in similar cases.

In argument of this case, the State called the court's attention to the admission of evidence, during the sentencing phase of the trial, showing that appellant had been convicted of grand larceny and burglary in the second degree, crimes which normally do not involve the use or threat of violence to the person. The convictions were immaterial and ineffective to prove the aggravating circumstance that appellant had been convicted previously of one or more felonies involving the use or threat of violence to the person, and should not have been admitted in evidence. *See State v. Harries,* 657 S.W.2d 414, (Tenn.1983); *State v. Moore,* 614 S.W.2d 348 (Tenn.1981). However, we are convinced beyond a reasonable doubt that the error was harmless. The record shows that the State also introduced evidence of an assault by appellant on a Pennsylvania State Trooper in 1977 and of appellant's consequent conviction for aggravated assault. This evidence was sufficient to prove the aggravating circumstance that appellant had previously been convicted of one or more felonies involving the use or threat of violence to the person.

Further, the evidence of the other two aggravating circumstances found by the jury was overwhelming and in no way dependent on proof of the convictions of the non-violent felonies. And, as heretofore noted, there was no evidence of any mitigating circumstance. We have no basis to believe, therefore, that the introduction of the convictions for non-violent crimes could be prejudicial to appellant.

The conviction of murder in the first degree and the sentence of death imposed by the Criminal Court of Washington County are affirmed. The death sentence will be carried out as provided by law on the 29th day of May, 1984, unless stayed by appropriate authority. Costs are adjudged against the appellant, Kenneth Wayne Campbell.

I am authorized to state that Justice BROCK concurs in the affirmance of conviction but dissents from the imposition of the death penalty for the reasons expressed in his dissent in *State of Tennessee v. Dicks,* 615 S.W.2d 126, 132 (Tenn.1981).

FONES, C.J., and HARBISON and DROWOTA, JJ., concur.

BROCK, J., concurs in part and dissents in part.