STATE OF TENNESSEE

*v.*

JOE CLINTON MORAN.

385 S.W.2d 912.

(*Nashville,* December Term, 1964.)

Opinion filed January 6, 1965.

JAMES P. KELLEY, Assistant Public Defender, Nashville, for Joe Clinton Moran.

GEORGE F. McCANLESS, Attorney General, THOMAS E. Fox, Assistant Attorney General, for the State.

MR. SPECIAL JUSTICE ROBERT S. CLEMENT delivered the opinion of the Court.

The Plaintiff in error, Joe Clinton Moran, hereinafter referred to as the Defendant or by name, was convicted of armed robbery in Davidson County and sentenced to serve twenty (20) years in the State Penitentiary. An accomplice, William H. Buchanan, was tried jointly with the Defendant and sentenced to serve a workhouse sentence of eleven (11) months and twenty-nine (29) days and to pay a fine of Fifty ($50.00) Dollars. Buchanan did not appeal.

The Defendant Moran has appealed to this Court and has made five assignments of error, two of which deal with the sufficiency of the evidence. The third and fourth assignments of error deal with the confession or oral statement of the Defendant, counsel for the Defendant insisting that the Trial Judge made no determination as to whether the statement was given freely and voluntarily.

The fifth assignment of error objects to the introduction of a certain stocking cap introduced in evidence, the insistence being that there was no evidence to connect the Defendant with the ownership or possession of said stocking cap.

On December 19, 1963, three men entered the Jim Dandy Market at 317 Hermitage Avenue in Davidson County and robbed same. Dorris L. Haywood was the clerk in charge of the market when the robbery took place at about 10:30 P.M. Haywood testified that the Defendants Moran and Buchanan, and another man, identified in the record as one Brown, entered the market on three different occasions on December 19th, the first

time at about 6:30 P.M., again at 9:30, and about 10:30. On the first two trips, the men made small purchases and left the store. On these occasions there were other customers in the store. At 10:30 the three men came back in the store and made a small purchase. On this occasion there were no customers in the store. This witness testified that Defendant Moran said: "This is a stick-up". Moran was armed with a shot gun. Witness testified that he gave to the men Four Hundred Ninety-Six Dollars and Sixty-Three Cents ($496.63), this amount being determined by checking the cash register. The men then told witness to "bag up" the money and to get into the back room. Witness was compelled to stick his hands up against the wall, at which time he was hit with a coca-cola bottle, knocking him to the floor and as he struggled to get up, Brown stuck a knife in Haywood's back. About two days afterwards, witness identified Moran and Brown in a police line-up. He said there was no doubt in his mind that these were the two men who robbed him.

State's witness, T. D. Allen, testified that on the night of December 19, 1963, he was in the Jim Dandy Market and saw three men there. Witness placed the time of his being in the store at about 10:30 P.M. or quarter until 11:00 P.M. Witness left by a taxi cab before the robbery took place. This witness identified in a police line-up Buchanan and Moran as two of the men he saw in the store.

Metropolitan Police Officer Thomas G. Cathey, one of the officers assigned to investigate the robbery, testified that the next day after the robbery they received a call that prompted them to pick up Moran. They talked with Moran, but he did not give them a signed statement. This officer testified that the Defendant was advised of his

rights in that he did not have to make a statement, that he was entitled to the services of an attorney, and that any statement given would be used against him. At this point, counsel for the Defendant insisted that the jury be excused and that the Trial Judge make a determination as to the admissibility of the statements alleged to have been made by the Defendant Moran to see if same were voluntarily given and otherwise complied with the law pertaining to confessions. The Trial Judge overruled this motion and Defendant noted an exception.

Officer Cathey testified that the Defendant Moran stated that he had spent the night at 130 Wharf Avenue, the residence of Mrs. Raines. The officers went to the Raines' residence the next day and after getting permission from Mrs. Raines they searched the premises and found a blue sock cap with eye holes cut in it, a bag of quarters, a navy blue raincoat, a twelve gauge, sawed-off double barrel shot gun and two shot gun shells. These articles were brought to the police station and, over the objection of defense counsel, were introduced into evidence, the officer identifying the articles as those being taken from the Raines' home.

Another officer, William F. Nichols, testified to substantially the same facts as Officer Cathey, but going further and stating that the Defendant Moran said that he had talked over the proposed robbery the previous night, and that the day of the robbery he and Brown had stood by the counter and had stationed Buchanan outside the door. Defense counsel again objected, but the Trial Judge overruled the objection as to Moran. The Officer stated further that Moran said that he had held the shot gun on Mr. Haywood and that Brown had taken Haywood

into the back of the market and hit him on the head with a cold drink bottle.

Upon the conclusion of the State's proof in chief, the Defendant Buchanan changed his plea from guilty to armed robbery to a plea of guilty to attempt to commit a felony. Buchanan then took the stand and testified that on December 19, 1963, he went to Moran's house where he had supper about 4:30. That later they met Brown and it was then that Buchanan learned about the proposed robbery. He testified that the first he learned of the robbery was when he heard Moran and Brown discussing same. Buchanan admitted spending the night at the Raines' place with Moran and that Brown was there but did not spend the night. Buchanan testified that Moran told him that he, Moran, got in beside the counter and told the man to open the cash register. He told him to "sack it up", and Brown took him into the back room and knocked him out. Buchanan testified that he did not see Moran with a shot gun, however, he did know that he had the shot gun earlier in the evening, but that it was Brown who had the shot gun.

The Defendant Moran testified in his own behalf, stating that on the day of December 19, 1963, he left his home and spent the remainder of the day and that night in the home of Mrs. Raines on Wharf Avenue. That he was picked up the next day at Juvenile Court. He further testified that he had seen Brown twice on the day the robbery occurred and saw him in jail; that he understood that Brown was in Central State Hospital for observation at the time of the trial. He denied any participation in the crime or that he had ever seen the shot gun presented in evidence. Moran testified that the officers "roughed him up" as they brought him to the police

station. That he would not make a statement and one of the detectives "smacked him around" and said he was going to sign a statement.

On cross-examination Moran stated that Buchanan and two other men came to the Raines' home late at night on the day of the robbery. He said that Brown and the other man left, but Buchanan spent the night. He denied confessing to the officers that he committed the crime.

The State put on Officer Cathey and Paul T. Godsey in rebuttal and both denied that any force was used or that Moran was abused in any way.

We have gone into the facts of this case in an effort to see if there was sufficient evidence to convict the Defendant of the crime as charged.

Without considering the alleged confession of the Defendant, it can be readily seen that there is strong evidence of the Defendant's guilt upon which the jury could find Defendant guilty, including the positive identification of the Defendant by Dorris L. Haywood; the testimony of the Defendant's Co-defendant Buchanan, and the testimony of State's witness Allen who identified the Defendant Moran as being one of the three men he saw in the market just prior to the robbery.

■ It is well settled in this State that a conviction in a criminal case will not be reversed on the facts unless it is shown that the evidence preponderates against the verdict and in favor of the innocence of the accused. *Ford v. State,* 184 Tenn. 443, 201 S.W.2d 539; *Chadwick v. State,* 189 Tenn. 256, 255 S.W.2d 52; *Cooper v. State,* 123 Tenn. 37, 138 S.W.2d 826.

■ Thus, it follows that assignments of error Nos. 1 and 2 are overruled.

■ The Defendant insists in his third assignment of error that the oral confession of the Defendant Moran should not have been admitted because it was induced by hope and fear and was not free and voluntary.

Objection was first made to any admissions made by the Defendant while State's witness Thomas G. Cathey, a police officer, was on the stand. In the examination of Cathey's testimony, we do not find that Moran made any confession or admission to this witness except that he spent the night at 130 Wharf Avenue, the residence of Mrs. Raines. This was admitted by the Defendant and, therefore, we do not think that the Defendant's objection at this point was well taken. The rule in this State is that a conviction will not be reversed because the jury was allowed to consider inadmissible evidence where the record clearly shows that the Defendant admitted the facts therein contained to be true. *Hood v. State,* 148 Tenn. 265, 255 S.W. 51.

■ However, officer Nichols testified more in detail as to statements made by the Defendant, using such words as "well, I'll tell you the whole story now", alleged to have been made by the Defendant. This witness went on to say that Moran had told him that he had talked over the proposed robbery the previous night and went into greater detail concerning same. It should be kept in mind that the Defendant's accomplice, Buchanan, testified that he talked over the robbery with Moran. The Trial Judge seemed to be satisfied that the admissions or confessions of the Defendant Moran were freely and voluntarily made as proof is in the record that the Defendant was warned of his constitutional rights and offered counsel if he so desired. Certainly, there is sufficient evidence in the record on which the jury might find the Defendant guilty

374

without his confession. The question of the admissibility of a confession is a question of fact to be determined by the Trial Judge. The Trial Judge was satisfied that the admission or confession was properly obtained and we believe that the record upholds his findings. The fourth assignment of error is overruled.

██ ██ The Defendant complains in his fifth assignment of error about the introduction of the stocking cap, which was found at the Raines' home. The Trial Judge in his charge to the jury instructed the jury not to consider the cap which was made an exhibit as any evidence either for or against the Defendants. It must be presumed that the jury obeyed his instructions.

The rule in this State is that where incompetent evidence has been introduced, but is afterwards withdrawn, this Court will not reverse. *Marable v. State,* 203 Tenn. 440, 457-458, 313 S.W.2d 451.

After careful consideration of all the evidence and the assignments of error, we conclude that the Defendant had a fair trial and that there is ample evidence on which the jury could convict the Defendant. The judgment of the Trial Court is affirmed.

On Petition To Rehear

The Defendant has filed a forceful petition to rehear in this cause, insisting that the Court was in error in refusing to reverse the conviction of the Defendant because the Trial Judge did not, in the absence of the jury, make a preliminary determination concerning certain statements or an alleged confession of the Defendant, and that this Court has misinterpreted the introduction of certain exhibits, including a bag of quarters and a navy blue raincoat, which were introduced in evidence.

■ The record reflects that the officers testified that no force was used to obtain a statement from the Defendant and that he was advised of his right to employ counsel. While it is true that the general procedure is for the Trial Judge to make a preliminary determination in the absence of the jury, the Trial Judge in this cause seemed to be satisfied that the admissions or confessions of the Defendant were freely and voluntarily made. In addition to the alleged statements or confessions of the Defendant, there were eyewitnesses to the robbery who positively identified the Defendant. A Co-Defendant, Buchanan, testified against the Defendant in this cause, and we cannot see how the admission of the statements or confessions of the Defendant could have affected the verdict of the jury as there was an abundance of evidence to support the verdict without the confession or the evidence found in the Raines' house.

The petition to rehear must be denied.