**STATE of Tennessee, Appellee,**

v.

**Erskine Leroy JOHNSON, Appellant.**

Supreme Court of Tennessee,
at Jackson.

Oct. 3, 1988.

On State's Petition to Rehear
Dec. 5, 1988.

Harold D. Archibald, Memphis, Robert M. Paskal, Clayton, for appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, James W. Thompson, Asst. Atty. Gen., Nashville, for appellee.

OPINION

O'BRIEN, Justice.

This is a direct appeal by defendant, Erskine Leroy Johnson from his conviction of first degree murder and sentence of death imposed by the jury. Defendant had the benefit of the services of dual retained counsel at trial. Separate briefs have been filed and a number of issues have been raised. We first consider charges of reversible error purportedly occurring during the impanelling of the jury.

Both defense counsel have asserted on this appeal that defendant was denied a fair and impartial trial as a result of the exclusion of members of his race from the jury through exercise of peremptory challenges by the State during the jury selection process.

Defendant, a black man, was tried by an all white jury. After the jury was selected a motion was made for a mistrial. Counsel requested that the jury be excused and a new jury impanelled. The basis for this request was that sixteen (16) or seventeen (17) jurors were stricken over objection of counsel as a result of their expressed belief against the death penalty. It was argued that all but one of the persons excused were of the black race. The result according to counsel, was a jury composed entirely of Caucasians which did not accurately reflect a cross-section of the community, and deprived defendant of a trial before a jury of his peers. The specific objection made was to the exclusion of potential jurors challenged for cause and excused over defense objection.

State's counsel differed with the defense on the number of jurors who were excused because of their views on capital punishment, as well as the numbers who might have been of the defendant's race.

At the conclusion of the arguments made by counsel the trial judge stated he understood the nature of the objection made by defense counsel and denied the request for mistrial or the striking of the jury. A similar argument, based on the same objections, was made on the motion for new trial and also overruled.

In this Court, relying on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986) defendant argues he was denied equal protection at the jury selection phase of the proceedings having estab-

lished that he was a black man and a member of a cognizable racial group. He says after fourteen (14) black jurors were excluded for other reasons, the Attorney General used peremptory challenges to strike the remaining six (6) eligible black persons from the jury panel. He argues that the trial court should have required the Attorney General to offer a neutral explanation for excluding all potential black jurors. This was not done and he insists he is entitled to a new trial.

The exercise of peremptory challenges by the State for purely racial reasons violates the Equal Protection Clause. *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In *Batson,* supra, the court overturned the evidentiary requirements of *Swain,* and held:

"... [A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant must first show that he is a member of a cognizable racial group ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate' ... Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the impanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.... (Citations omitted).

Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors ..."

This case came to trial on 2 December, 1985, approximately three months prior to the time the *Batson* decision was handed down. In *Batson,* Justice O'Connor and Justice White concurring, and Chief Justice Burger in dissent, all expressed the view that the decision did not apply retroactively. However, in *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), in two cases in which the exercise of peremptory challenges at trial were the principal issue, the court, in a split decision, held, "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a clear break with the past." Therefore, there is no margin for deviation in this case if defendant has made a prima facie showing of discrimination.[1] We hold that he has not.

There is not an iota of evidence in this record to show this issue was ever presented to the trial court, either at the trial proceeding or at the hearing on the motion for new trial. There was never an objection made on the basis of the prosecutor's removal of black persons from the venire by the exercise of peremptory challenges. The record reflects that the issue was never asserted in the trial court during the venire selection process, or in the impanelling of the jury. There is no reference to the record to support the generalized assertion that the State Attorney exercised peremptory challenges to strike six (6) eligible black persons from the jury panel. There was nothing in that regard called to the trial judge's attention to enable him to rule on the issue.

It would seem to us the appropriate procedure would be to call such matters to the trial court's attention at the time the event occurs in order that a ruling on the issue may be either made or reserved for consideration. This procedure will afford court and counsel the opportunity to note or produce whatever evidence is available. The trial judge can then determine if the

1. See *State v. Bell,* 745 S.W.2d 858 (Tenn.1988).

circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors. See *Batson*, supra, 106 S.Ct. at 1723.

In a sub-issue relating to jury selection defendant protests that jurors Judy Dickey and Pam Boyce were excused because of their disbelief in capital punishment on religious grounds. The record indicates otherwise. Each of these witnesses indicated some Christian or religious belief against the death penalty. The trial judge inquired of each of them if their views, religious or otherwise, would prevent them as a sworn juror from applying the law given by the court concerning the death penalty in the case. He inquired from them at length whether they could return the death penalty if they found the State proved beyond a reasonable doubt and to a moral certainty that one or more aggravating circumstances existed and there were no mitigating circumstances which outweighed the aggravated circumstance. Each of them responded in the negative.

In *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 1777, 20 L.Ed.2d 776 (1968) the United States Supreme Court established the standard that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." In *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980) the court restated the standard to be, "... that a juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." "The State may insist, however, that jurors will consider and decide the facts impartially and conscientiously apply the law as charged by the court." In *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) the Court reaffirmed the standard from *Adams* as the proper one for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment. They stated that standard to be "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" The court further held that a trial judge's determination that a prospective capital sentencing juror was properly excluded for cause was a finding of fact to be accorded the presumption of correctness. *Id.* 105 S.Ct. at 854. Jurors Dickey and Boyce were properly excused in accordance with the criteria set in *Wainwright v. Witt*, supra.

Defendant complains of denial of a continuance and also denial of a defense motion to strike the testimony of a witness, Beverly Batts. It is insisted the court's action violated defendant's right to compulsory process and effective assistance of counsel. The record is not quite clear on this issue. The witness, Beverly Batts, testified at trial in reference to certain admissions made to her by the defendant. He allegedly told her he was on the run from St. Louis and that "he and two friends of his stole a car from St. Louis Airport and came to Memphis and did a robbery and there was a murder and it didn't have to be and he did it." Apparently an investigator for the Attorney General's Office learned of Ms. Batts existence in the early part of September, 1985. They had an address for her in St. Louis, Missouri but she was subsequently found in California. Communication was made with her through the California authorities. A pre-trial court order directed that the names of all witnesses for trial were to be endorsed on the indictment by 12 November 1985. This witness' name was not endorsed on the docket until 22 November 1985. The State insists that on the date of trial, 2 December 1985, they still did not have an address for this witness. Prior to her testimony defense counsel was afforded an opportunity to ask her questions which she refused to answer. Defendant's principal complaint is that he was effectively precluded from conducting any background investigation on the crimi-

nal record of the witness and from obtaining possible rebuttal testimony.

The State could have apprised defendant's counsel of the name of the witness but there is no evidence that they had an address for her which could have been supplied. Ms. Batts' criminal record in California was presented at trial. The transcript reflects that defense counsel fairly and capably cross-examined her. Defendant has failed to show how he was surprised or handicapped in preparing his case or what could have been gained had a continuance been granted. We find this issue to be without merit.

Defendant says the evidence was insufficient to sustain his conviction and he was entitled to an acquittal at the close of the State's proof. On the issue of acquittal the State responds that the defendant presented proof in his defense at trial and thereby waived his motion for acquittal at the conclusion of the State's proof under the authority of *Mathis v. State,* 590 S.W.2d 449 (Tenn.1979).

Tenn.R.Crim.P. 29(a) clearly and explicitly provides that if a defendant's motion for judgment of acquittal at the close of the evidence offered by the State is not granted, the defendant may offer evidence without having reserved the right. Criminal Procedure Rule 1 specifically provides that "These rules govern the procedure in all criminal proceedings conducted in all courts of record in Tennessee." Any case law to the contrary has been specifically preempted by the rules.

■ Our review of the record leaves no doubt that the evidence amply supports the verdict of the jury. Between 8:30 and 9:00 a.m. on 2 October 1983 Joe Belenchia, owner of a Food Rite grocery in Memphis, was killed in the course of an attempted robbery. An eyewitness to the holdup made an in-court identification of the defendant as the person who killed Mr. Belenchia. He had also made a pretrial identification of defendant from a photo display. He further identified, Jerome Moreland, a friend of defendant's, who was also involved. The witness was not 100% sure of his identification at trial and only "pretty sure" of his pretrial identification. This was a question for the jury's determination. This witness had also seen a Burgundy-colored station wagon in the store parking lot with two people in the front and two in the back. One of the passengers in the rear seat was a female. This vehicle was subsequently linked to the crime. Earlier in the morning of the robbery a young boy saw a man switching license plates from a car parked in the street to a maroon station wagon. Three people were in the station wagon and the man switching the license plate was observed talking to a woman in a white car. The number on the license plate was the same as the number on the vehicle used in the robbery. A palm print taken from this vehicle was subsequently identified as defendant's. Defendant was wearing an orange or rust colored suede or leather jacket which was identified by at least two witnesses to the robbery. Another witness in the grocery store at the time of the robbery testified that a woman, accompanied by a man, attempted to get into the store office. She was carrying a brown paper bag in her hand. She was prevented from doing so by the security guard who in turn was restrained by the man, who put a gun to his head. At that time the witness heard the sound of three shots coming from the front of the store. During the police investigation the maroon station wagon was traced to the St. Louis Airport. Defendant's cousin, Elizabeth Starks, testified that defendant and another man named Jerome came to her home the night before the homicide. They were traveling in a maroon station wagon. The next morning defendant, Jerome and another man came to her residence. Her boyfriend, Dennis Williams went with the three men to the store for cake mix about 7:00 a.m. When Mr. Williams returned he was pale and acted exhausted and upset. Subsequently defendant, Jerome and a third man returned to her house. A woman in a white car also came there. As previously noted, the witness Beverly Batts testified that several months later defendant told her he and two friends had stolen a car from the St. Louis Airport and he had

committed a robbery and murder in Memphis.

Defendant offered an alibi defense through a number of witnesses who testified that on the night of 1 October 1983 and the morning of 2 October 1983 he was in St. Louis at a birthday party for his mother. He testified that he attended the birthday party and on the following morning took his children to his mother's house in order to attend church. He denied knowing Ms. Starks and said that Ms. Batts told him she would keep him in jail because he would not pay her bail in California.

The conflicts in the testimony have been settled by the verdict of the jury. The evidence, summarized here, was sufficient to support the jury's verdict in accordance with *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and T.R. A.P. 13(e). Defendant was not entitled to an acquittal under this evidence and we find no merit to his contentions on this issue.

■ Defendant claims error on the admission of certain photographs of the victim on the basis that they only served to arouse and inflame the passions and emotions of the jury. The admissibility of photographs is a matter to be determined by the trial court in the exercise of its sound discretion. *State v. Melson*, 638 S.W.2d 342, 364 (Tenn.1982). To warrant its admissibility a photograph must be relevant to some issue at trial. Even relevant evidence should not be admitted if its prejudicial effect outweighs its probative value. *State v. Banks*, 564 S.W.2d 947, 951 (Tenn. 1978). The trial judge here closely examined the photographs proffered by the State for admission. He excluded a number, which we also have examined. We agree they were properly excluded. On the other hand those pictures admitted for the jury to see were relevant to show the location and nature of the victim's gunshot wounds and they were not particularly gruesome. *State v. Goad*, 707 S.W.2d 846 (Tenn.1986).

■ A complaint is made about the admission of the testimony of Dennis Williams a witness for the State. Williams was present in the home of Elizabeth Stark on the night before the robbery when defendant and his friends came to her home. He gave a very incriminating pretrial statement to the police but apparently he had been threatened prior to trial by persons unknown. He refused to testify about the facts and circumstances contained in his pretrial statement. There is no doubt that he exhibited great fear in the trial court. The jury was not informed of the reasons for his fright however, it is probable they attached it to or associated it with defendant and his trial. The trial judge instructed the jury to disregard Williams' statements about his fears. They are presumed to have followed the instructions. *State v. Moran*, 215 Tenn. 366, 385 S.W.2d 912 (1965). Whatever speculation the jurors may have made about Williams' statements and testimony, there was sufficient evidence to support the verdict of the jury and he gave no testimony that aided the State's case. The issue is without merit.

■ Defendant insists the trial court erroneously instructed the jury, over his counsel's objection, on the element of flight. The circumstances are somewhat nebulous surrounding the delivery of this instruction to the jury. Apparently the objection to the instruction was made in chambers on the basis that the flight instruction was not warranted. In court the trial judge indicated he had previously ruled that the instruction would be given because the evidence raised the question and he considered that the jury should be properly informed. The evidence is not strong on the issue. Defendant disappeared after the robbery and homicide. By his own testimony he went to California in December of 1983. He told Beverly Batts, that he was "on the run" from St. Louis because he had stolen a car from the airport there and had committed a robbery and murder in Memphis. An instruction regarding flight is proper where there is evidence from which the jury may infer that a defendant fled. We conclude that the instruction was appropriate in this case.

A number of challenges are raised to the constitutionality of the Tennessee Capital Punishment Act. By the first of these a contrast is made with the capital punishment statutes in the States of Georgia, Florida and Texas and by virtue of the differences among these statutes it is asserted that the Tennessee Act has the effect of imposing an automatic life sentence upon a defendant at the conclusion of the guilt phase of the proceedings if he is found guilty of first degree murder.

It would be useless to attempt an analysis of the various state statutes in relation to the Tennessee Capital Punishment law. In *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the United States Supreme Court held that the penalty of death may not be imposed under sentencing procedures that create a substantial risk that the punishment will be inflicted in an arbitrary and capricious manner. They mandated that a capital sentencing scheme must provide a meaningful basis for distinguishing the few cases in which the penalty is imposed from the many cases in which it is not. See *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). In *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 1764, 64 L.Ed. 2d 398 (1980) the court further emphasized the constitutional responsibilities imposed in those jurisdictions where capital punishment legislation has been enacted:

> "This means that if a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its laws in a manner that avoids the arbitrary and capricious infliction of the death penalty. Part of a State's responsibility in this regard is to define the crimes for which death may be the sentence in a way that obviates 'standardless [sentencing] discretion.'" (Citations omitted). It must channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" (Citations omitted).

■ There is no requirement that sentencing systems must be uniform among the various States authorizing a capital punishment scheme of sentencing. This Court has long ago disposed of the argument that the Tennessee Sentencing Procedure upon conviction of first degree murder poses an automatic life sentence. The issue was fully explored in *Houston v. State,* 593 S.W.2d 267, 275 (Tenn.1980), and needs no further exposition here.

■ Defendant insists the Capital Punishment Act in Tennessee is unconstitutional because a person charged under the Act is required to defend against proof of aggravating circumstances on which he has not been indicted or been given notice of otherwise, and which will be used to impose a heavier sentence of death upon him.

■ He was charged in the indictment in this case with first degree murder in the perpetration of a robbery with a deadly weapon and with premeditation and malice aforethought. The punishment for this offense is death or by imprisonment for life. A sentencing procedure statute is not rendered invalid because it does not notify a defendant of the specific aggravating circumstances which the jury may consider in order to impose the maximum punishment for the offense. Before a sentence of death can be declared the jury must unanimously determine that at least one of the several listed statutory aggravating circumstances have been proved by the State beyond a reasonable doubt and that those circumstances are not outweighed by any mitigating circumstances. This notwithstanding, defendant was properly given notice by the State of the intent to seek the death penalty, specifying the particular aggravating circumstances it proposed to rely upon at the sentencing hearing in accordance with Tenn.R.Crim.P. 12.3(b). Defendant was entitled to no more.

■ Defendant argues that the Tennessee Capital Punishment Act imposes an automatic life sentence at the conclusion of the trial on the issue of guilt. He then insists that the second phase of the proceeding is tantamount to an enhancement of punishment as opposed to a separate sentencing hearing. Following this theory he contends that the requirement that ag-

gravating circumstances be proved beyond a reasonable doubt creates a separate and distinct crime of aggravated first degree murder which involves double jeopardy principles. The fallacy of this argument is that the standards provided in T.C.A. § 39–2–203 merely establish guidelines for the exercise of the jury's discretion in determining punishment and are not elements of the offense. See *Houston v. State*, supra at 276. In *State v. Austin*, 618 S.W.2d 738, 742 (Tenn.1981) this Court unequivocally refuted the argument that the bifurcated trial procedures mandated in Tennessee's Capital Punishment Act are violative of the double jeopardy provisions of the State and Federal Constitutions, saying, "the sentencing phase of the trial is concerned only with the punishment and does not in any sense constitute a second trial for the same offense or create a separate and additional offense."

■ Also without merit is the charge that admission of hearsay as evidence in the second stage of the proceedings violates the defendant's right of confrontation. T.C.A. § 39–2–203(c) provides in pertinent part that, "in the sentencing proceeding, evidence may be presented as to any matter that the court deems relevant to the punishment ... regardless of its admissibility under the rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statement so admitted. However, this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or of the State of Tennessee." A person has no standing to contest the constitutionality of a statutory provision unless the provision he claims to be deficient has been used to deprive him of his rights. The record reflects that there was no inadmissible hearsay evidence introduced in the punishment phase of defendant's trial. See *State v. Pritchett*, 621 S.W.2d 127, 141 (Tenn.1981).

■ Defendant insists the sentencing system set forth in the Capital Punishment Act is so vague and broad that it results in the arbitrary and capricious imposition of the death penalty. He specifically argues that the Act provides a sentencing system which is internally contradictory because the standards in each of the several sections of the Act differ from the others in context. This argument attempts a semantical analysis of subsection (e)(f) and (g) of T.C.A. § 39–2–203. It is suggested the sections are conflicting because section (e) provides for the trial judge to include in his instructions for the jury to weigh and consider any mitigating circumstances and any of the statutory aggravating circumstances which may be *raised by the evidence*. He finds a conflict between sections (e) and (f) on the theory that section (f) requires the jury to weigh aggravating circumstances which it *finds unanimously have been proved beyond a reasonable doubt* with the mitigating circumstances. He then theorizes that section (g) provides a further conflict because the jury must determine that any aggravating circumstance found must not be outweighed by any mitigating circumstances in order to assess a death penalty.

These arguments were fully answered in *Houston v. State*, supra where the Court said:

"As to the contention that the statute is vague because it allows the jury to 'weigh' aggravating and mitigating circumstances, the [United States] Supreme Court has made it clear that a jury must be given guidance in determining punishment when a death penalty is a possible punishment: ...

The legislature of Tennessee provided for the necessary guidance of the jury by detailing in the statute the manner in which the jury is to arrive at the punishment, and by instructing the jury to consider evidence of aggravating circumstances and mitigating circumstances as provided in subsections (e), (f), and (g) of [T.C.A. § 39–2–203]. Subsection [(03)] of the act provides that all evidence introduced at both the guilt and sentencing hearings may be considered by the jury in arriving at punishment.

Under these sections, in arriving at punishment, the jury must first determine

whether the state has proved any of the statutory aggravating circumstances beyond a reasonable doubt. If the jury finds that none have been proven according to the required standard, the jury must return a verdict of life imprisonment. [T.C.A. § 39–2–203(f)].

To arrive at a punishment of death, the jury must find that the state has established a statutory aggravating circumstance beyond a reasonable doubt. Additionally, however, the jury must find that the statutory aggravating circumstance is not outweighed by one or more mitigating factors. These separate determinations must be put in writing and given to the trial judge along with the sentence of death, thus assuring that the jury has gone through the correct analysis in arriving at a death sentence. This is the suggested procedure of the Model Penal Code § 201.6, Comment 3, page 72 (Tent. Draft No. 9, 1959), noted with approval by the United States Supreme Court in *Jurek v. Texas*, 428 U.S. 262, 271 n. 6, 96 S.Ct. 2950, 2956 n. 6, 49 L.Ed.2d 929 (1976)."

 We also overrule defendant's contention that the terms of aggravating circumstances which the jury are required to find in order to invoke the death penalty are vague and overboard to the degree that they allow juries to impose the death sentence arbitrarily. We note initially that defendant refers to the circumstance that the offense was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind. This jury was not instructed on that aggravating circumstance and therefore it does not apply to defendant's case. The jury in this case was instructed that the death penalty could not be imposed except upon a unanimous finding of one or more of the following statutory aggravating circumstances:

(1) The defendant was previously convicted of one or more felonies, other than the present charge, which involved the use of threat or violence to the person.

(2) The defendant knowingly created a great risk of death to two or more persons, other than the victim murdered during his act of murder.

(3) The murder was committed while the defendant was engaged in committing, or was attempting to commit, robbery.

The very language of the aggravating circumstances enumerated makes baseless the argument that they are susceptible to an overly broad interpretation by juries. The contention that there are no decisions of this Court providing a appropriate interpretative ruling in reference to this portion of the act is refuted by the case law in this State. Defendant relies on *Gregg v. Georgia*, supra, in which the court said, "a death penalty system *could have* standards so vague that they would fail adequately to channel the sentencing decision patterns of juries with the result that a pattern of arbitrary and capricious sentencing like that found unconstitutional in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), could occur." Defendant has not made reference to any United States Supreme Court case requiring the specificity of definition which he insists is necessary to establish the constitutionality of a capital sentencing scheme. In this State the requirement that a trial judge provide the jury with a statutory definition of felonies relied upon by the State as an aggravating circumstance is a rule established by this Court in *State v. Moore*, 614 S.W.2d 348, 350–351 (Tenn.1981) in which the Court directed trial judges to include in their instructions to the jury the statutory definition of any felony relied upon by the State as an aggravating circumstance. This rule has been reiterated in numerous cases since. In *State v. Bryant*, 654 S.W. 2d 389 (Tenn.1983), in which a sentence of death was affirmed on other grounds, the Court referred to the *Moore* rule, admonishing trial courts that, "under our supervisory power, we direct trial courts to charge jurors narrowly, giving them guidance on the law to be applied to facts which are reasonably raised by the evidence." Also see *State v. Buck*, 670 S.W.2d 600, 608 (Tenn.1984); *State v. Williams*, 690 S.W.2d 517 (Tenn.1985); *State v. Duncan*, 698 S.W.2d 63, 70 (Tenn.1985). The Constitution does not require a State to adopt specific standards for instructing the jury in

its consideration of aggravating and mitigating circumstances. See *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 2750, 77 L.Ed.2d 235 (1983).

 Defendant says that the provisions of T.C.A. § 39-2-206, fixing death as an alternative punishment for an accessory before the fact of first degree murder renders the capital punishment act unconstitutional and that the imposition of a death penalty in convictions for murders that are not "deliberate in fact" renders the act unconstitutional. In the first instance, defendant does not have standing to assert this issue in reference to an accessory before the fact. The evidence in this case clearly establishes his complicity as a principal. Assuming arguendo that defendant had standing to raise these issues the evidence in this case clearly establishes that the mantle of protection from the imposition of the death penalty spread by the United States Supreme Court's decision in *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), does not encompass him. In *Enmund* the Court held that the Eighth Amendment prohibits imposition of the death penalty on an aider and abettor who has not shown to have himself killed, attempted to kill, intended to kill, or contemplated that life would be taken. More recently in *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987) the Court reconsidered its decision in *Enmund* and held that the Eighth Amendment does not prohibit the death penalty as disproportionate in the case of a defendant whose participation in a felony that resulted in murder is major and whose mental state is one of reckless indifference. We are satisfied that the Tennessee Capital Punishment scheme does not violate the Eighth Amendment interdiction against cruel and unusual punishment.

 T.C.A. § 39-2-205 specifically provides for automatic review by this Court in every case where a sentence of death has been invoked. This review requires the Court to determine whether the sentence was imposed in an arbitrary fashion; that the evidence supports the jury's findings of a statutory aggravating circumstance or circumstances; that the evidence supports the jury's finding of the absence of any mitigating circumstances sufficiently substantial to outweigh the aggravating circumstance or circumstances found; and whether the sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the nature of the crime and the defendant. In performing this mandatory duty we have reviewed this record in detail and are of the opinion that the jury did not act arbitrarily or capriciously in imposing the death penalty in this case. The evidence supports their finding of each of the three statutory aggravating circumstances reported in their verdict. The jury was properly instructed on and considered all mitigating circumstances offered in evidence and found none sufficiently substantial to outweigh the statutory aggravating circumstances. We agree with that conclusion. The death sentence in this case was not excessive or disproportionate to sentences imposed in similar cases.

The defendant's conviction of first degree murder and the sentence of death are affirmed. The death sentence will be carried out as provided by law on 10 November 1988, unless otherwise stayed or modified by appropriate authority. Costs are taxed to appellant.

HARBISON, C.J., and FONES, COOPER and DROWOTA, JJ., concur.

## ON STATE'S PETITION TO REHEAR

The State has filed a respectful petition to rehear, averring:

(1) The Court's opinion is in conflict with a prior decision and principle of law.

(2) The Court's opinion misapprehends a proposition of law.

(3) The Court's opinion relies on a matter of law upon which the State has not been fully heard.

Among the issues raised by defendant he argued that the trial court erred in denying his motion for acquittal at the close of the State's case.

In a rather perfunctory response to this issue, consisting of one short paragraph in

the State's appellate brief, it was insisted the motion for acquittal at the conclusion of the State's proof was waived by presenting evidence, under the authority of *Mathis v. State*, 590 S.W.2d 449 (Tenn.1979).

This Court completely reviewed the evidence, found it sufficient to support the jury's verdict and held that defendant was not entitled to an acquittal.

In passing we noted that:

"Tenn.R.Crim.P. 29(a) clearly and explicitly provides that if a defendant's motion for judgment of acquittal at the close of the evidence offered by the State is not granted, the defendant may offer evidence without having reserved the right."

We stated that "any case law to the contrary has been specifically preempted by the rules."

It is this statement which impels State's counsel to differ with the Court, submitting that Tenn.R.Crim.P. 29 and *Mathis v. State*, supra, are not inconsistent. It is insisted that the rule in question does not preempt the holding in *Mathis*.

After reviewing our statement in the record and seriously contemplating the matter at length we do not believe the statement in question conveys the impression attributed to it by counsel.

*Mathis*, as we review it, turned on an entirely different issue. In that case the trial judge erred in taking under advisement the defendant's motion for a "directed verdict" made at the conclusion of the State's proof. This Court held that the defendant compounded the error by not standing on his motion or raising any objection to the action of the trial court. In fact, he cross-examined a co-defendant before announcing that he rested his case. In discussing the appropriate procedure to be employed by a defendant who moves for acquittal at the conclusion of the State's proof this Court cited authorities far predating the criminal procedure rules and the statutes authorizing motions for acquittal in criminal cases. These authorities dealt with civil cases and the advantages accruing to a defendant who chose to except to the action of the Court in overruling a motion for directed verdict.

 We do not mean to imply that a defendant does not waive a motion for acquittal made at the end of the State's proof by not standing on his motion and proceeding to offer evidence. See *State v. Thompson*, 549 S.W.2d 943, 945 (Tenn.1977). We do not think our original opinion raises that connotation.

In substance, we do not find any conflict in our opinion with any prior decision or principle of law. Nor do we find any misapprehension of any proposition of law. The Court has lent its consideration to the matter of law upon which the State avers it has not been fully heard.

The petition to rehear is denied.

HARBISON, C.J., and FONES, COOPER and DROWOTA, JJ., concur.