IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 1, 2015

**STATE OF TENNESSEE v. MARLON YARBRO**

**Appeal from the Circuit Court for Hardin County
No. 9894    Charles C. McGinley, Judge**

_____

**No. W2015-00475-CCA-R3-CD  -  Filed October 5, 2015**

_____

Appellant, Marlon Yarbro, appeals from his convictions for drug offenses, arguing that the State introduced improper evidence of previous misconduct and violated his right to compulsory process and also argues that the trial court improperly applied the drug free school zone enhancement to his conviction for simple possession.  After a thorough review, we conclude that Appellant is not entitled to relief on the judgments for selling a controlled substance within a school zone and possession of drug paraphernalia. However, because the school zone enhancement was improperly applied to the simple possession conviction, we remand to the trial court for entry of a corrected judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Modified in Part, and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR. and ROGER A. PAGE, JJ., joined.

Guy T. Wilkinson, District Public Defender (on appeal), and Terry Lee Dicus, Jr. (at trial), Savannah, Tennessee, for the appellant, Marlon Yarbro.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Matthew Stowe, District Attorney General; and Joshua C. Turnbow, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*I.  Facts and Procedural Background*

This is Appellant's direct appeal from the Circuit Court of Hardin County of his convictions of sale of cocaine within 1000 feet of a school zone, simple possession of marijuana, and possession of drug paraphernalia.

On July 21, 2014, Appellant was indicted for (1) selling .5 grams or more of a Schedule II controlled substance within 1000 feet of a school zone, (2) possession of over .5 ounces of a Schedule VI controlled substance with intent to manufacture, sell, or deliver within 1000 feet of a school zone, and (3) possession of unlawful drug paraphernalia. Appellant was tried with a co-defendant, Jonathan Jones, on January 5, 2015.[1]

At trial, Jason Caldwell testified that he worked for the Hardin County Sheriff's Department in the 24th Judicial District Drug Task Force. His training for the drug task force included courses in basic narcotics investigation and trafficking, and he had previous experience using criminal informants in drug investigations.

One of Agent Caldwell's criminal informants was Brian Whitman. Before this case, Mr. Whitman had worked as an informant for Agent Caldwell on three occasions. Mr. Whitman worked with law enforcement because he was seeking favorable treatment for his own pending charges. In this particular case, Mr. Whitman wanted favorable treatment for a driving under the influence ("DUI") charge pending in McNairy County, and he was also paid $100 for his assistance. At the time of the trial, Mr. Whitman was serving forty-five days of jail time associated with a reduced DUI conviction that he received in consideration for his service on this case. Mr. Whitman has "probably had twenty" DUI convictions "since back in the '80s."

On April 28, 2014, Mr. Whitman informed Agent Caldwell that he "knew an individual who was selling larger amounts of crack cocaine other than just your regular street level half gram, gram buys." This drug dealer, later identified as Appellant, "moved" about $500 worth of cocaine per transaction while operating out of an apartment complex across the street from Hardin County Middle School.

After Agent Caldwell agreed to use Mr. Whitman's tip for a monitored drug transaction, Mr. Whitman called Appellant to arrange a meeting to purchase crack cocaine. Mr. Whitman asked for $500 worth of crack, which he assumed would be for a quarter-ounce amount. Appellant instructed Mr. Whitman to walk to a particular location near the apartment complex where they would meet for the transaction.

---

[1] The State dismissed all indictments against co-defendant Jones at the conclusion of its case-in-chief.

-2-

Agent Caldwell picked up Mr. Whitman in his vehicle. Agent Caldwell searched Mr. Whitman and provided him with $500 in cash for the drug purchase. He also fixed Mr. Whitman with an audio-visual recording device. Agent Caldwell dropped off Mr. Whitman at a Days Inn motel and remained in the parking lot while Mr. Whitman walked toward the apartment complex.

Mr. Whitman met Appellant on the side of the road for the transaction. Appellant was accompanied by another man, whom Mr. Whitman had never seen before. They came from the direction of the apartment complex and returned in the same direction. Mr. Whitman gave Appellant the $500, and Appellant gave Mr. Whitman crack cocaine. The crack was not inside a bag or container; it was "loose" so that it could be easily disposed of if law enforcement officers arrived.

After the transaction, Mr. Whitman returned to Agent Caldwell's vehicle and produced what appeared to be crack cocaine. Agent Caldwell performed a field test on the substance and confirmed that it was cocaine. Mr. Whitman denied hiding any of the cocaine that he purchased or giving some of the cocaine to anyone else.

Agent Caldwell discovered that Appellant and the co-defendant were the two men present and recorded during the drug transaction with Mr. Whitman. Agent Caldwell served an arrest warrant for Appellant at the apartment complex on June 23, 2014, with the assistance of the United States Marshals Service. Appellant was found in the upstairs bedroom along with over twenty-three grams of marijuana, digital scales, and $180 in cash.

Mr. Whitman identified the co-defendant as the man who was with Appellant during the transaction, although he did not know his name. Mr. Whitman said the co-defendant was in a position to witness the drug transaction, but he did not know if the co-defendant knew what was happening between Mr. Whitman and Appellant. The co-defendant was not involved in the drug transaction in any way other than merely being present during the transaction. During cross-examination, however, Mr. Whitman testified that he could not identify the co-defendant as the man with Appellant aside from the fact that he was charged and present in the courtroom.

Brock Sain testified that he was a forensic scientist for Tennessee Bureau of Investigation. He received 3.15 grams of a substance in connection with this case, and when tested, that substance was identified as cocaine base. Mr. Sain also received 23.89 grams of plant material which tested as marijuana.

Charles Childress of the Tennessee Highway Patrol testified that, by his measurement, the front door of the apartment where Appellant was arrested was 195 feet and ten inches away from the lawn of Hardin County Middle School. The location where

the drug transaction occurred was ten feet from the lawn of Hardin County Middle School.

Courtney Weber testified on behalf of Appellant. She and Appellant had "been together for a very long time." They did not live together, but Appellant stayed with her sometimes. She knew Mr. Whitman through Appellant's uncle. Ms. Weber rented the apartment where Appellant was arrested and was present when it happened. She said that she gave Appellant the $180 the night before he was arrested to pay her cable bill while she was at work. She knew that Appellant used marijuana "from time to time," but she had never seen crack cocaine in her apartment. The marijuana discovered when Appellant was arrested belonged to him, not her. Ms. Weber was not aware that Appellant sold marijuana or cocaine.

The jury convicted Appellant, as charged, of selling .5 grams or more of a Schedule II controlled substance within 1000 feet of a school zone, a Class A felony, and of possession of unlawful drug paraphernalia, a Class A misdemeanor. On count two, the jury found Appellant guilty of the lesser included offense of simple possession, a Class A misdemeanor. The trial court imposed a sentence of twenty-five years with a mandatory 100% to serve for the Class A felony. Appellant received a two-year sentence for the simple possession conviction and eleven months and twenty-nine days for the drug paraphernalia conviction. All three of these sentences are running concurrently.

Appellant's motion for new trial was denied, and he timely filed a notice of appeal.

## II. Analysis

Appellant raises three issues on appeal: (1) whether the trial court should have granted a mistrial when the State elicited evidence of previous misconduct from the defense witness; (2) whether Appellant's constitutional right to compel witnesses to testify on his behalf was violated when the State charged and tried the co-defendant but dismissed those charges during the trial; and (3) whether the trial court erred in applying the drug free school zone enhancement to the conviction of simple possession.

### A. Evidence of Previous Misconduct

During the State's cross-examination of Ms. Weber, the following exchange occurred:

Prosecutor: Does he sell marijuana?

Witness: Not that I know of, no.

Prosecutor: Does he sell cocaine?

Witness: Not that I know of.

Prosecutor: Have you ever seen him do that?

Witness: No.

Prosecutor: And you're his girlfriend, right?

Witness: In the past. But that was a long time ago.

Prosecutor: In the past what?

Witness: When was that? 2004 when he got caught.

Prosecutor: Caught what?

Defense Counsel: Objection, Your Honor.

Trial Court: Objection sustained.

Defense Counsel: I request a curative instruction.

Trial Court: You're not to consider any prior bad actions. He's on trial for a specific charge for a specific date. Okay.

Tennessee Rule of Evidence 404(b) establishes that "[e]vidence of other crimes, wrongs, or acts" is inadmissible character evidence if offered to show a defendant's "action in conformity with [a] character trait." "The terms of this rule establish that character evidence cannot be used to prove that a person has a propensity to commit a crime." *State v. McCary*, 119 S.W.3d 226, 243 (Tenn. Crim. App. 2003) (citing *State v. Adkisson*, 899 S.W.2d 626 (Tenn. Crim. App. 1994)).

Appellant argues that the State elicited inadmissible and prejudicial evidence of previous misconduct from Ms. Weber about Appellant's previous conviction for selling cocaine. Although he did not make a contemporaneous request for a mistrial, Appellant argued in his motion for new trial and his appellate brief that a new trial is necessary to remedy the prejudice sustained from the testimony.

A trial court has the authority to declare a mistrial sua sponte. *State v. Mounce*, 859 S.W.2d 319, 321-22 (Tenn. 1993). This Court will review a trial court's decision not to grant a mistrial, whether requested or not, for an abuse of discretion. *See State v. Nash*, 294 S.W.3d 541, 546 (Tenn. 2009); *Bouchard v. State*, 554 S.W.2d 654, 659 (Tenn. Crim. App. 1977). "Normally, a mistrial should be declared only if there is a manifest necessity for such action." *State v. Saylor*, 117 S.W.3d 239 (Tenn. 2003). A mistrial is appropriate when "a trial cannot continue, or a miscarriage of justice would result if it did." *Id.* (internal quotation omitted). Although "no abstract formula should be mechanically applied" to determine when a mistrial is justified, our courts have commonly looked to three nonexclusive factors for guidance in situations involving improper witness testimony: "(1) whether the State elicited the testimony, or whether it was unsolicited; (2) whether the trial court offered and gave a curative jury instruction; and (3) the relative strength or weakness of the State's proof." *Nash*, 294 S.W.3d at 546-47 (citing *State v. Smith*, 893 S.W.2d 908 (Tenn. 1994)) (internal quotation omitted).

Ms. Weber was called as a witness by Appellant to explain his possession of $180 when he was arrested. However, the State argues that Appellant "opened the door" to the issue of Ms. Weber's knowledge of Appellant's past drug use during direct examination. Defense counsel asked her, "Have you ever witnessed any crack cocaine in your house?" She replied, "No." The State objected to relevancy, reasoning that this case involved only the "specific date and time in this indictment." The trial court overruled the objection. Defense counsel then proceeded to ask, "Does [Appellant] use marijuana sometimes?" Ms. Weber said, "From time to time." Defense counsel followed up with, "Occasionally?" She said, "Yes."

Appellant was charged with possession of marijuana with intent to sell. Presumably seeking a conviction for a lesser included offense, defense counsel chose to offer evidence of Appellant's mental state with regard to his possession of marijuana by asking Ms. Weber about her knowledge of Appellant's use of marijuana. Thus, it seems that defense counsel did indeed open the door to the prosecutor's cross-examination of Ms. Weber's knowledge of Appellant's history of drug dealing. By opening the door, Ms. Weber's responses during cross-examination were arguably admissible under Rule 404(b), but the trial court sustained the objection, and we will not question that decision on appeal. However, suffice it to say, the State's decision to broach this issue on cross-examination after it was touched upon during direct examination should not be held against the State. The prosecutor was not attempting to circumvent the protection of Rule 404(b). Indeed, the State sought to avoid the entire issue when it objected to defense counsel's questions during direct examination.

Furthermore, Ms. Weber's statement that Appellant "got caught" in 2004 was somewhat vague and nonresponsive, as the prosecutor had already moved on to a new line of questioning. The trial court sustained defense counsel's objection and promptly

gave a curative instruction as requested by defense counsel, which the jury is presumed to have followed. *State v. Brewer*, 932 S.W.2d 1, 27 (Tenn. 1996) (citing *State v. Johnson*, 762 S.W.2d 110, 116 (Tenn. 1988)). Defense counsel seems to have been content with the instruction because he did not request additional instruction and did not ask for a mistrial at that time. *See State v. Karen E. Carpenter*, No. E2010-02391-CCA-R3-CD, 2011 WL 4346655, at *4 (Tenn. Crim. App. Sept. 19, 2011) (quoting *State v. Griffis*, 964 S.W.2d 577, 599 (Tenn. Crim. App. 1997)) (holding that if a party is "dissatisfied with the [curative] instruction given and does not request a more complete instruction, the party effectively waives the issue for appellate purposes"), *perm. app. denied* (Tenn. Dec. 14, 2011).

And finally, the substantial evidence supporting Appellant's conviction for selling cocaine in a school zone makes it unlikely that Ms. Weber's comment improperly affected the jury's verdict. Moreover, Appellant's conviction of the lesser included offense of simple possession of marijuana, rather than the charged offense of possession with intent to sell, demonstrates that the jury was not inclined to convict Appellant based simply on a propensity theory, i.e., "once a drug dealer, always a drug dealer." There hardly seems to be a manifest necessity for a mistrial under the facts and circumstances of this case.

## B. Right to Compulsory Process

Appellant argues that the State circumvented his constitutional right to compel witnesses to testify on his behalf by charging the co-defendant, Mr. Jones, as an accomplice despite "absolutely no evidence" to do so, which prevented Mr. Jones from being available to testify as a witness for Appellant. The State responds that Appellant made no effort to secure Mr. Jones as a witness.

The Sixth Amendment to the Constitution of the United States and article I, section 9 of the Constitution of the State of Tennessee guarantee a criminal defendant's right to compulsory process for obtaining the testimony of material witnesses. *See State v. Ostein*, 293 S.W.3d 519, 536 (Tenn. 2009). We agree with the State that the record contains no evidence that Appellant ever desired or sought to have Mr. Jones testify on his behalf. Appellant could have sought to sever his trial to achieve this purpose, but he did not do so. Additionally, once Mr. Jones was released from prosecution, Appellant could have called him as a witness during his case-in-chief. Furthermore, there is no evidence that the State acted in bad faith in bringing charges against the co-defendant for the purpose of making his testimony unavailable. Although Mr. Whitman's testimony at trial failed to provide the necessary evidence for a conviction of Mr. Jones, that turn of events does not indicate that there was no basis for the State to pursue a conviction against him in the first place. Thus, the trial court did not abuse its discretion, and Appellant is not entitled to relief on this issue. This issue is without merit.

## C. Sentencing

Appellant also argues that the trial court erred in applying the drug free school zone enhancement to his conviction for the lesser included offense of simple possession. The State concedes that this was error.

Tennessee Code Annotated section 39-17-432(b) provides a classification enhancement for violations of Section 39-17-417 which occur within 1000 feet of a school zone. Appellant was indicted under Section 39-17-417(a)(4) for possession of a controlled substance with intent to sell. However, Appellant was convicted of the lesser included offense of simple possession under Section 39-17-418. By its plain terms, Section 39-17-432(b) is only applicable to violations of Section 39-17-417. Because Appellant was not convicted under that statute in count two, the drug free school zone enhancement did not apply to the conviction offense. Therefore, the trial court erred in classifying Appellant's conviction for simple possession as a Class E felony and sentencing him outside the range for a Class A misdemeanor. Consequently, we remand this conviction to the trial court for correction of the judgment and the improper sentence. Because Appellant already received a sentencing hearing and the trial court ordered concurrent sentencing, reducing the sentence to eleven months and twenty-nine days does not, in our view, require a new sentencing hearing.

## III. Conclusion

For the foregoing reasons, the trial court's judgments for selling a controlled substance within a school zone and possession of drug paraphernalia are affirmed. However, the judgment for simple possession is remanded for correction of the judgment to reflect a conviction for a Class A misdemeanor and a sentence of 11 months and 29 days, concurrent with Counts 1 and 3.

_____
TIMOTHY L. EASTER, JUDGE