IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs May 20, 2025

**STATE OF TENNESSEE v. TRAVIS ROGERS**

**Appeal from the Criminal Court for Shelby County**
No. 20-03742          James Jones, Jr., Judge

_____

**No. W2024-01572-CCA-R3-CD**

_____

Travis Rogers, Defendant, was convicted by a jury of first degree murder. Defendant challenges the trial court's denial of the motion for judgment of acquittal made at the close of the State's proof. After the State rested, Defendant put on proof. Because Defendant waived his challenge to the trial court's denial of the motion for judgment of acquittal at the close of the State's proof by putting on proof, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and MATTHEW J. WILSON, JJ., joined.

Phyllis Aluko, District Public Defender; Barry W. Kuhn, Assistant District Public Defender (on appeal); Robert Felkner, Assistant District Public Defender (at trial), for the appellant, Travis Rogers.

Jonathan Skrmetti, Attorney General and Reporter; Ryan Dugan, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Devon Dennis and Shannon Toon, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

Defendant was indicted for first degree murder by the Shelby County Grand Jury for the shooting death of the sixteen-year-old victim, Jamarion Williams. At trial, the following evidence was introduced.

On July 31, 2020, Kadrian Boyce picked up his "neighborhood friend," the victim, to "take him to . . . [h]is momma['s] house." Mr. Boyce drove a Toyota Camry that belonged to his child's mother. They stopped at the Marathon gas station on "Thomas" at around 1:30 p.m. to get gas.

A white Mitsubishi Gallant parked at the pump next to Mr. Boyce's car. The Gallant was missing its hubcaps and had damage to a bumper. Mr. Boyce got out of the car and went into the store. Mr. Boyce started to come back out of the store to "ask [the victim] something" about "the CashApp card or something." He walked back into the store to pay for the gas. Once Mr. Boyce was inside the store, Defendant got out of the driver's seat of the Gallant and shot the victim five times at close range.

When Mr. Boyce opened the door of the gas station he "hear[d] gun shots." The clerk started "screaming." Defendant returned to the Gallant and tried to open the car door with his left hand but could not open the door because he had a cast on his hand. Defendant was wearing blue jean shorts, a multicolored shirt, and a backwards baseball cap. By the time Mr. Boyce ran back to the car, the victim was "in the car dead" and the Gallant was pulling away. Mr. Boyce ran away from the scene to get the victim's brother, who lived "[i]n the apartments next to the gas station."

Law enforcement officers obtained the security footage from the gas station and pulled several still pictures of Defendant exiting the Gallant, shooting the victim, and returning to the car.

The victim died from five gunshot wounds. The victim had one wound to the back of his head and upper neck area, three gunshot wounds along his right shoulder, one gunshot wound in the back of his right arm, and one gunshot wound on the outside edge of his chest. A bullet was recovered from the victim's brain. The victim was shot from the right while seated in the passenger seat of a car. The medical examiner opined that the victim crouched to avoid being shot and that the manner of death was homicide.

Mr. Boyce was unable to see the shooter but later "heard it from the street" that Defendant might be the shooter. He was able to locate the "possible shooter['s] Facebook page" with the name "Thirty Birdy." Mr. Boyce identified the person on the Facebook page as "the person . . . [the victim] was into it with" or had "beef" with, and Mr. Boyce saw "a video [of the person] with a broken left hand." He discovered that the person was named "Travis."

Law enforcement officers identified Defendant as the individual on the Facebook page based on his driver's license photo. Officers obtained an address and went to a home where they saw a white Mitsubishi Gallant in the driveway. The car had no hubcaps and

had damage to a bumper. Defendant's mother, Daniell Marshall, confirmed that Defendant owned the vehicle.

Lieutenant Michael Coburn, the lead detective on the case, observed a Memphis Police Realtime Crime Center ("RTCC") camera next to the driveway of the home. The camera footage from July 31 at 11:24 a.m. showed Defendant wearing the same clothing as the shooter. Defendant left the home in the Gallant. Officers secured a search warrant for Defendant's car. The car had damage to the left rear bumper, the driver's side door, and did not have any hubcaps. There was a pink and white cast in the car. Defendant was arrested. At the time, his left hand was visibly injured.

Defendant made several phone calls after he was incarcerated. In a call made on August 10, 2020, Defendant stated that the camera caught him leaving his "momma['s] house." Defendant also discussed the items found during the execution of the search warrant. In a second call, on August 17, 2020, Defendant mentioned that someone pulled up his Facebook page and identified him from the photograph. In a third call on September 11, 2020, Ms. Marshall stated that Defendant was wearing the same clothing in the footage from the RTCC and the footage from the gas station.

Ms. Marshall told police that Defendant had metal implants in his left hand due to an injury from fireworks on the 4th of July. Ms. Marshall identified Defendant as the person shown in the RTCC footage and in the gas station footage.

At the conclusion of the State's proof at trial, Defendant made a motion for a judgment of acquittal. The trial court denied the motion.

Defendant testified, admitting that he did not know the victim personally. He stated that he knew him "from the streets." Defendant explained that he and the victim were in different gangs and that was the source of their "beef."

Defendant claimed that one week prior to the victim's death, the victim shot at him. Defendant testified that he went to the Marathon to get gas. He noticed that the victim was in the car next to him and claimed he saw the victim reach for something. Defendant assumed the victim was reaching for a gun, so he shot the victim in the back five times. Defendant did not think he executed the victim, instead claiming he "blacked out" and did not intend to shoot the victim. Defendant did not know where he got the gun or what happened to the gun after the shooting.

Defendant renewed his motion for judgment of acquittal at the conclusion of the proof. The trial court denied the motion. The jury found Defendant guilty of first degree

murder, and the trial court sentenced him to life in prison.  Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant argues that the trial court erred in denying the motion for judgment of acquittal because the evidence was insufficient to prove the identity of Defendant and premeditation.  Specifically, Defendant argues that the evidence placing Defendant at the gas station with the gun is "circumstantial" because the State failed to prove that the "Mitsubishi Gallant seen at the gas station was the only Mitsubishi Gallant in the Mid-south or Memphis area that had no hub caps and had a dent in the bumper." Additionally, Defendant argues that the State failed to prove how many people in Memphis had their "arm in a bandage" and/or "an injury from a fireworks display after the Fourth of July."  Defendant concedes that his conversation with his mother about his photograph outside her home "might point the finger at [Defendant]" but still argues that his identity was not proven.  As to premeditation, Defendant argues that "nothing on the video . . . shows acts of deliberation or reflection to indicate premeditation."  The State argues that Defendant has waived his claim that the trial court erred by denying the motion for judgment of acquittal by putting on proof.  In the alternative, the State argues that the evidence to support the conviction was "more than sufficient."  In a reply brief, Defendant argues that the waiver argument advanced by the State is "no longer the law in Tennessee."

Initially, we note that Defendant chose to offer proof following the trial court's denial of his motion for a judgment of acquittal at the close of the State's proof.  Despite his argument to the contrary, because he elected to present evidence of his own, he has waived his right to appeal the denial of his motion at the conclusion of the State's proof. *See Finch v. State*, 226 S.W.3d 307, 317 (Tenn. 2007) (declining to revisit the waiver rule promulgated in *Mathis v. State*, 590 S.W.2d 449, 453 (Tenn.1979)); *see also State v. Johnson*, 762 S.W.2d 110, 121 (Tenn. 1988); *State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998).  This issue is waived.

Interestingly, Defendant renewed his motion for judgment of acquittal at the conclusion of all the proof.  The trial court again denied the motion.  On appeal, Defendant does not argue that the trial court erred in denying the motion made at the close of all the proof or that the evidence was insufficient to support the conviction.  To the extent his argument could somehow be interpreted as a challenge to the sufficiency of all of the evidence presented at trial, we find the evidence sufficient to support the conviction for first degree murder.  Defendant admitted on the stand, under oath, that he had "beef" with the victim and shot the victim five times in the back, leaving him to die.  Any issue related to insufficient evidence to support Defendant's identity or premeditation to kill the victim was established in the State's proof and firmly nailed by Defendant's own testimony.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

s/Timothy L. Easter
TIMOTHY L. EASTER, JUDGE